# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## FIRST JUDICIAL DISTRICT AT JUNEAU, ALASKA

Klukwan, Inc. and the General Income Trust

    Plaintiffs,

v.

XL Specialty Insurance Company, a Delaware Corporation, Licensed to Business in Alaska Under ID 8085

    Defendant.

RECEIVED
EXTON LEGAL

MAR 1 9 2013
Case No. 1JU-12-_924_ CI
XL INSURANCE

## SUMMONS AND NOTICE TO BOTH PARTIES OF JUDICIAL ASSIGNMENT

To:  XL Specialty Insurance Company
   70 Seaview Avenue
   Stamford, CT 06902

  You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at: P.O. Box 114100 Juneau, AK 99811, within 20 days after the day you receive this summons. In addition, a copy of your answer must be sent to Simpson, Tillinghast, Sorensen & Sheehan, plaintiff's attorneys, whose address is One Sealaska Plaza, Suite 300, Juneau, Alaska, 99801,

  If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

  If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address/Telephone Number* (TF-955), available at the clerk's office or on the court system's website at www.state.ak.us/courts/forms.htm, to inform the court.

-OR-

  If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

To: Plaintiff and Defendant

You are hereby given notice that this case has been assigned to Judge _____

THIS CASE FORMALLY ASSIGNED TO JUDGE PHILIP PALLENBERG BY ORDER OF THE PRESIDING JUDGE

DATED this 9 day of *November*, 2012.

      Clerk of Court

      By _____

SUMMONS & NOTICE TO BOTH PARTIES OF JUDICIAL ASSIGNMENT
*Klukwan Inc. and General Income Trust v. XL Specialty Insurance Company*
Case No. 1JU-12_____ CI

            TF Page 1 of 1

SIMPSON, TILLINGHAST, SORENSEN, & SHEEHAN
One Sealaska Plaza, Suite 300
Juneau, Alaska 99801
(907) 586-1400 Fax: (907) 586-3065

# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## FIRST JUDICIAL DISTRICT AT JUNEAU, ALASKA

KLUKWAN, INC. and THE GENERAL INCOME TRUST,

Plaintiffs,

v.

XL SPECIALTY INSURANCE COMPANY , a Delaware corporation, licensed to business in Alaska,

Defendant.



Filed in the Trial Courts
STATE OF ALASKA, FIRST DISTRICT
AT JUNEAU

NOV 0 9 2012

By_____ Deputy

Case No. 1JU-12-__924 CI__

## COMPLAINT

Plaintiffs Klukwan, Inc. ("KLI") and the General Income Trust ("GIT"), by and through counsel, Simpson, Tillinghast, Sorensen & Sheehan, P.C., file this lawsuit under the laws of the State of Alaska, for damages against XL Specialty Insurance Company ("XLS") alleging that XLS caused injury to KLI and GIT by breaching XLS's contract of insurance with KLI and GIT, committing misrepresentation and fraud upon KLI and GIT, making negligent representations to KLI and GIT, and breaching fiduciary duties owed to KLI and GIT.

## PARTIES, JURISDICTION AND VENUE

**1.** KLI is an is the Alaska Native village corporation for Klukwan, Alaska, a Alaskan Native community located near Haines. KLI was chartered in 1973 pursuant to the Alaska Native Claims Settlement Act ("ANCSA"), and is licensed to do business in Alaska.

**2.** GIT is an ANCSA Settlement Trust, established in 1995 by KLI, along with the Long Island Trust and Educational Trust (the three trusts hereinafter are sometimes referred to together as the "Trusts"), under ANCSA. The purpose of the Trusts is to create an investment and education fund for the benefit of KLI Shareholders, and to provide a source of regular dividends for KLI Shareholders.

**3.** XLS is a corporation organized in the State of Delaware. XLS is licensed and authorized to conduct business as an insurer in the State of Alaska, I.D. No. 8085.

**4.** The Superior Court has jurisdiction over this matter pursuant to AS 22.10.020.

**5.** Venue is proper in the First Judicial District at Juneau.

## COMMON ALLEGATIONS

SIMPSON, TILLINGHAST, SORENSEN, & SHEEHAN
One Sealaska Plaza, Suite 300
Juneau, Alaska 99801
(907) 586-1400   Fax: (907) 586-3065

6.      KLI and GIT hereby incorporates and realleges, as if fully set forth, the allegations contained in paragraphs 1 through 5 of the complaint.

7.      KLI and GIT have been insured by XLS since October 31, 2009 (the "Policy"). The Policy declaration, applicable during all periods of this complaint, is attached hereto as Attachment A.

8.      On or about October 23, 2010, after the start of litigation styled: *Rosemarie Hotch v. Klukwan, Inc., et al*, Case No. 1PE-10-067 (herein, the "Lawsuit"), Rosemarie Hotch's ("Rosemarie") attorney Fred Triem ("Triem") promptly mailed a copy of the complaint to XLS, which put XLI on notice of Rosemarie's claims against KLI and current and former trustees of GIT (herein, the Trustees).  A copy of the original complaint filed in the Lawsuit is attached as Attachment B.

9.      On November 11, 2010, KLI President Ralph Strong ('Strong") received an email from Chris Bader of Arthur J. Gallagher Rick Management Services, Inc.  The email is attached as Attachment C.  The email stated that XLS would not tender a defense for KLI or the Trustees.  Therefore, KLI paid for its own defense costs and fees and GIT paid the defense costs and fees for the Trustees.

10.     On February 22, 2011, XLS sent a letter to KLI and the Trustees formally denying their request to tender a defense in the Lawsuit.  The letter is attached as Attachment D.

11.     On September 2, 2011, James Sheehan ("Sheehan"), the attorney representing KLI and the Trustees in the Lawsuit sent a letter to XLS demanding that XLS tender a defense for KLI and the Trustees and, if necessary, indemnify KLI and the Trustees.  The letter is attached as Attachment E.

12.     On April 18, 2012, XLS responded to Sheehan's letter with a letter advising that it would neither tender a defense nor indemnify KLI or the Trustees.  The letter is attached as Attachment F.

13.     Upon information and belief, XLS, is in breach of contractual duties of good faith and fair dealing to KLI, GIT and the Trustees, has established a pattern of conduct and practice designed to wrongfully withhold reimbursement benefits due to KLI, GIT and the Trustees under the Policy.

COMPLAINT                                                                                      Page 2 of 5
*Klukwan Inc. and General Income Trust v. XL Specialty Insurance Company*
Case No. 1JU-12_____ CI

SIMPSON, TILLINGHAST, SORENSEN, & SHEEHAN
One Sekaska Plaza, Suite 300
Juneau, Alaska 99801
(907) 586-1400   Fax: (907) 586-3065

## COUNT I (DECLARATORY JUDGMENT)

**14.** KLI and GIT hereby incorporates and realleges, as if fully set forth, the allegations contained in paragraphs 1 through 13 of the complaint.

**15.** KLI and GIT bring this claim under the laws of the State of Alaska.

**16.** There is an actual or justifiable controversy between the parties concerning XLS's coverage available to KLI and the Trustees.

**17.** KLI and GIT seek a declaration that KLI and the Trustees have coverage for defense costs and indemnification under the Policy for the claims made in the Lawsuit.

## COUNT II (MISREPRESENTATION)

**18.** KLI and GIT hereby incorporates and realleges, as if fully set forth, the allegations contained in paragraphs 1 through 17 of the complaint.

**19.** XLS's advertising was false and misleading as it related to reimbursement under the Policy. KLI and GIT understood that the Policy protected KLI and the Trustees from claims for relief similar to that asserted in the Lawsuit.

**20.** KLI and GIT, in justifiable reliance on such representations and omissions by XLS, purchased contracts of insurance from XLS, all of which reliance was intended or known to XLS.

**21.** XLS misrepresented to KLI and GIT that KLI and the Trustees were entitled to reimbursement for defense costs and fees as required by the Policy.

**22.** XLS knew, or should have known, that such acts, omissions, and representations were false, would tend to mislead or deceive the insured, and were believed by KLI and GIT.

**23.** As a result of the justifiable reliance on such representations, KLI and GIT suffered damages. In turn, XLS increased its profits by paying out nothing to KLI and GIT.

## COUNT III (VIOLATION OF STATE LAW)

**24.** KLI and GIT hereby incorporates and realleges, as if fully set forth, the allegations contained in paragraphs 1 through 23 of the complaint.

**25.** XLS's acts and omissions as complained of herein violate Alaska laws – AS 21.36.020, .030, and .125.

## COUNT III (BAD FAITH)

SIMPSON, TILLINGHAST, SORENSEN, & SHEEHAN
One Sehaska Plaza, Suite 300
Juneau, Alaska 99801
(907) 586-1400  Fax: (907) 586-3065

COMPLAINT                                                                 Page 3 of 5
*Klukwan Inc. and General Income Trust v. XL Specialty Insurance Company*
Case No. 1JU-12_____ CI

**26.** KLI and GIT hereby incorporates and realleges, as if fully set forth, the allegations contained in paragraphs 1 through 25 of the complaint.

**27.** XLS's acts and omissions in deliberately refusing to properly pay defense costs and fees and indemnify KLI and the Trustees, and otherwise assist in settling claims with Rosemarie and Triem, in violation of the covenant of good faith and fair dealing, is conduct so outrageous as to support an award of punitive damages.

## COUNT V (BREACH OF CONTRACT)

**28.** KLI and GIT hereby incorporates and realleges, as if fully set forth, the allegations contained in paragraphs 1 through 27 of the complaint.

**29.** XLS have willfully refused and failed to provide coverage in accordance with the Policy and applicable law.

**30.** XLS have failed to properly and promptly undertake efforts to fairly settle the loss, with the result that KLI and GIT have funded defense of the Lawsuit, paid damages, and incurred significant expenses in pursuing attempted settlement of their loss.

**31.** As a result of XLS's refusal and failure to properly provide coverage of the loss and settlement practices, KLI and GIT have suffered losses.

## COUNT VI (BREACH OF COVENANT OF GOOD FAITH)

**32.** KLI and GIT hereby incorporates and realleges, as if fully set forth, the allegations contained in paragraphs 1 through 31 of the complaint.

**33.** Throughout the denial of the KLI's and GIT's claim to XLS, and failure to assist in the settlement process, XLS violated its obligations of good faith and fair dealing.

**34.** XLS's actions were in violation of covenants of good faith and fair dealing imposed by law.

**35.** As a result of XLS's actions, KLI and GIT have been damaged in an amount to be proven at trial.

## COUNT VI (BAD FAITH SETTLEMENT PRACTICES)

**36.** KLI and GIT hereby incorporates and realleges, as if fully set forth, the allegations contained in paragraphs 1 through 35 of the complaint.

**37.** Upon information and belief, XLS's actions, and the actions of XLS's agents and employees, in denying and refusing coverage were without basis in law or fact, outrageous and in bad faith.

COMPLAINT Page 4 of 5
*Klukwan Inc. and General Income Trust v. XL Specialty Insurance Company*
Case No. 1JU-12_____ CI

SIMPSON, TILLINGHAST, SORENSEN, & SHEEHAN
One Sealaska Plaza, Suite 300
Juneau, Alaska 99801
(907) 586-1400  Fax: (907) 586-3065

SIMPSON, TILLINGHAST, SORENSEN, & SHEEHAN
One Sekaska Plaza, Suite 300
Juneau, Alaska 99801
(907) 586-1400   Fax: (907) 586-3065

38.     As a result of XLS's actions, KLI and GIT have been damaged in an amount to be proven at trial.

39.     XLS's actions in denying and refusing coverage were without basis in law or fact, outrageous and in bad faith.  KLI and GIT should be awarded punitive damages in an amount to be proven at trial.

## PRAYER

WHEREFORE, KLI and GIT demand judgment against XLS for:

1.     A declaration that KLI and the Trustees have coverage from XLS under the Policy for reimbursement of claims made in the Lawsuit.

2.     An amount sufficient to compensate KLI and GIT for all damages which may be proved, in an amount presently estimated to greatly exceed $100,000.00.

3.     Punitive damages in an amount to be established at trial.

4.     Attorney fees, costs, and all other remedies to which KLI and GIT may be entitled.

5.     For such other and further relief as the court deems just and proper.

Dated this 9th day of November, 2012.

SIMPSON, TILLINGHAST, SORENSEN & SHEEHAN
Attorneys for KLI and GIT

By: _____
James J. Sheehan
Alaska Bar # 0506056

THIS CASE FORMALLY ASSIGNED TO
JUDGE PHILIP PALLENBERG
BY ORDER OF THE PRESIDING JUDGE

COMPLAINT                                                                         Page 5 of 5
Klukwan Inc. and General Income Trust v. XL Specialty Insurance Company
Case No.  1JU-12_____ CI

**Policy Number:** ELU114455-09
**Renewal of Number** ELU108069-08

**XL Specialty Insurance Company**

Members of the XL America Companies

---

### PRIVATE COMPANY INSURANCE
### POLICY DECLARATIONS

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

---

EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS IS A CLAIMS-MADE POLICY.

NOTICE: THE LIABILITY COVERAGE SECTIONS OF THIS POLICY APPLY ONLY TO CLAIMS OR, IF THE PENSION AND WELFARE BENEFIT PLAN FIDUCIARY LIABILITY COVERAGE PART IS PURCHASED, COMPLIANCE REQUESTS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. THE LIMIT OF LIABILITY AVAILABLE UNDER THE LIABILITY COVERAGE PARTS TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE EXPENSES, AND IF APPLICABLE, COMPLIANCE COSTS.

PLEASE READ AND REVIEW THE POLICY CAREFULLY.

---

**Item 1.**    **Name and Mailing Address of Parent Company:**

Klukwan Inc
425 Sawmill Rd
P.O. Box 209
Haines, AK 99827-0209

| Service Fee $600.00 |
| --- |

---

**Item 2.**    **Policy Period:**    **From:**    October 31, 2009    **To:**    October 31, 2010

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

---

**Item 3.**    **Liability Coverage Parts:**

(a)    $2,000,000    Maximum Aggregate Limit of Liability each Policy Period (including Defense Expenses) for all Claims under the Management & Company Liability Coverage Part

(b)    $2,000,000    Maximum Aggregate Limit of Liability each Policy Period (including Defense Expenses) for all Claims under the Employment Practices Liability Coverage Part

(c)    $1,000,000    Maximum Aggregate Limit of Liability each Policy Period (including Defense Expenses and Compliance Costs) for all Claims under the Pension and Welfare Benefit Plan Fiduciary Liability Coverage Part

(d)    $3,000,000    Maximum Aggregate Limit of Liability (including Defense Expenses) for all Claims under all applicable Liability Coverage Parts

---

NOTE: If there is no Limit of Liability for a Coverage Part, no coverage is available under that Coverage Part.

"This is evidence of insurance procured and developed under the Alaska Surplus Lines Law, AS 21.34. It is not covered by the Alaska Guaranty Association Act, AS 21.80.

Swett & Crawford License #24992"

PS 70 00 06 08

Page 1 of 4

Attachment A, page 1

**PRIVATE COMPANY REIMBURSEMENT INSURANCE POLICY DECLARATIONS**

| Item 4. | **Non-Liability Coverage Parts:** | | |
|---|---|---|---|
| | (a) | N/A | all direct loss under the Crime Coverage Part, Insuring Agreement A – Employee Theft |
| | (b) | N/A | all direct loss under the Crime Coverage Part, Insuring Agreement B - Premises |
| | (c) | N/A | all direct loss under the Crime Coverage Part, Insuring Agreement C – In Transit |
| | (d) | N/A | all direct loss and reasonable court costs and attorney fees under the Crime Coverage Part, Insuring Agreement D - Forgery |
| | (e) | N/A | all direct loss under the Crime Coverage Part, Insuring Agreement E – Computer Fraud |
| | (f) | N/A | direct loss under the Crime Coverage Part, Insuring Agreement F – Funds Transfer Fraud |
| | (g) | N/A | all direct loss under the Crime Coverage Part, Insuring Agreement G – Money Orders and Counterfeit Currency Fraud |
| | (h) | N/A | direct loss and reasonable court costs and attorney fees under the Crime Coverage Part, Insuring Agreement H – Credit Card Fraud |
| | (i) | N/A | all direct loss under the Crime Coverage Part, Insuring Agreement I – Client Coverage |
| | (j) | N/A | all Expense Coverage under Insuring Agreement J – Expense Coverage |

NOTE: If there is no Limit of Liability for a Coverage Part, no coverage is available under that Coverage Part.

| Item 5. | **Retentions:** | | |
|---|---|---|---|
| | (a) | $0 | each Insured Person each Claim under INSURING AGREEMENT I (A) of the Management & Company Liability Coverage Part |
| ✓ | (b) | $75,000 | each Claim under INSURING AGREEMENT I (B) of the Management & Company Liability Coverage Part |
| ✓ | (c) | $75,000 | each Claim under the Employment Practices Liability Coverage Part |
| | (d) | $0 | each Claim under the Pension and Welfare Benefit Plan Fiduciary Liability Coverage Part |
| | (e) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement A – Employee Theft |

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 8 of 44

## PRIVATE COMPANY REIMBURSEMENT INSURANCE POLICY DECLARATIONS

| | | |
|---|---|---|
| (f) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement B – Premises |
| (g) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement C – In Transit |
| (h) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement D – Forgery |
| (i) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement E – Computer Fraud |
| (j) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement F – Funds Transfer Fraud |
| (k) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement G – Money Orders and Counterfeit Currency Fraud |
| (l) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement H – Credit Card Fraud |
| (m) | N/A | each direct loss under the Crime Coverage Part, Insuring Agreement I – Client Coverage |
| (n) | N/A | all Expense Coverage under the Crime Coverage Part, Insuring Agreement J – Expense Coverage, resulting from each direct loss covered under Insuring Agreements A - I |

**Item 6.**   **Optional Extension Period (applicable to Liability Coverage Parts Only):**

Premium for One Year Optional Extension Period:    $122,817.50

Premium for Two Year Optional Extension Period:    N/A

**Item 7.**   **Pending and Prior Proceeding Date(s):**

√ (a)    June 14, 2005    for the Management & Company Liability Coverage Part

√ (b)    June 14, 2005    for the Employment Practices Liability Coverage Part

√ (c)    June 14, 2005    for the Pension and Welfare Benefit Plan Fiduciary Liability Coverage Part

**Item 8.**   **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

√ **Item 9.**   **Premium:**

Taxes, Surcharges or Fees:    $0.00

Total Policy Premium:    $49,127.00

**Item 10.**   **Policy Forms and Endorsements Attached at Issuance:**
√ PS 71 00 07 07 √ PS 71 01 07 07 √ PS 71 02 07 07 √ PS 71 03 07 07   XL 80 24 03 03   PS 72 69 02 08
√ PS 72 70 04 08 √ PS 72 71 02 08 √ XL 83 21 08 00 √ PS 83 70 11 09 √ PS 83 72 11 09 √ PS 80 170 03 09
√ PC 80 18 08 00 √ PS 80 154 01 09

Attachment A, page 3

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 9 of 44

**PRIVATE COMPANY REIMBURSEMENT INSURANCE POLICY DECLARATIONS**

Countersigned: _____ By: _____
                      Date                      Authorized Representative

THESE DECLARATIONS AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE APPLICATION SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE INSURED RELATING TO THIS INSURANCE.

In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.

John R. Glancy                         Kenneth P. Meagher
President                              Secretary

**XL Specialty Insurance Company**

# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## FIRST JUDICIAL DISTRICT AT PETERSBURG

ROSEMARIE HOTCH

*Plaintiff,*

vs.

KLUKWAN, INC.,
AND
CHILKAT INDIAN VILLAGE
AND
DAVID BERRY, JR.
AND
EDWARD HOTCH
AND
JANICE HOTCH
AND
JOHN KATZEEK
AND
LESLIE KATZEEK
AND
CHAD STRONG
AND
RALPH STRONG

*Defendants.*

Filed in the Trial Courts
State of Alaska
First Judicial District at Petersburg

OCT 22 2010

By_____

Case No. 1PE-10-067 CI

## COMPLAINT FOR BREACH OF FIDUCIARY DUTIES,

## FOR PROTECTION OF TRUSTS, AND FOR MONEY HAD AND RECEIVED

Rosemarie Hotch, proceeding by and through her attorney, Fred W. Triem, according to Alaska Rules of Civil Procedure 7 - 10, submits her Complaint; and for her cause of action she alleges and avers as follows:

FRED W. TRIEM
ATTORNEY AT LAW
PROCTOR IN ADMIRALTY
BOX 1039
PETERSBURG, ALASKA
99833
(907) 772-0651

+  COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.       22 October 2010
   Hotch v. Klukwan, Inc. et al., -- Case No. 1PE-10-067CI                            Page 1 of 16

## I.     Identification of Parties

(1)     Defendant Klukwan, Inc., is the Alaska Native village corporation for Klukwan, a Native community located near Haines, Alaska. This corporation was chartered in 1973 pursuant to ANCSA § 8.

(2)     Klukwan, Inc. has a number of subsidiaries. Klukwan, Inc. and its subsidiaries are without financial reserves or capital. Klukwan, Inc., through its subsidiary, South Coast Construction, is subject to a judgment in excess of $6 million for funds now owed to Travelers Insurance Co.

(3)     In 1995, Klukwan, Inc. chartered and registered three ANCSA settlement trusts, the General Income Trust ("GIT"), the Long Island Trust ("LIT"), and the Klukwan Education Trust ("ET") (collectively the "three Trusts").

(4)     The three Trusts are authorized by ANCSA § 39, were chartered under the laws of the State of Alaska, and are governed by the laws of Alaska. After approval by a vote of its shareholders, Klukwan, Inc. funded the three Trusts. Klukwan is the settlor.

(5)     The three Trusts share common trustees; the same people are the trustees of all three Trusts and also are directors of Klukwan, Inc. The Trustees of the three trusts are, by terms of the trust documents, the directors of Klukwan, Inc.

(6)     Plaintiff Rosemarie Hotch was elected to the Board of Directors ("BOD") of Klukwan, Inc., on 31 July 2010; and she continues to serve on its BOD. By virtue of her election to the Klukwan BOD, Rosemarie Hotch is also a trustee of each of the three Trusts. Every Klukwan director is also a trustee of the three Trusts.

(7)     Chilkat Indian Village is an Alaska Native village organized under the Indian Reorganization Act ("IRA") of 1934 (25 U.S.C.) and is governed by an IRA Council.

FRED W. TRIGG
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triggslaw@alaska.net
(907) 772-3911

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 12 of 44

(8)  Each of the remaining defendants was a director of Klukwan, Inc. during the times relevant to this suit.  Each of the defendants was also a trustee of all three Trusts during the times relevant to this suit.  Each of the remaining defendants was a director of Klukwan, Inc. and a trustee of all of the three Trusts since 1 October 2007.

## II.  Factual Allegations

(9)  Under the terms of three Trusts created in 1995 — the Trustees have an inherent conflict of interest because they also are directors of Klukwan, Inc.

(10)  On 9 December 1995 the shareholders of Klukwan Inc. voted to establish three settlement trusts.

(A)  The General Income Trust (GIT) whose purpose is to provide payments to Klukwan, Inc. shareholders over time.  The trust documents and the custom of the trustees provided that the corpus of the Trust is to be maintained at the amount remaining in the Trust on December 31, 1998.  That amount is $28.6 million.  The Trust is to maintain a principal balance of at least $28.6 million and earnings above that amount are to be distributed to the beneficiaries on a pro rata per trust unit basis.

*NOT SO* [handwritten margin note]

(B)  The Long Island Trust (LIT) was to protect the second growth timber on Long Island.  17,044 acres contributed in August 1996 and 1600 acres contributed in Dec 1998, out of a total of 23,000 acres belonging to Klukwan, Inc. $4.5 million was contributed so that earnings would cover silviculture expenses until 2030.  Remaining earnings not used for silviculture were to be distributed to the beneficiaries on a pro rata per trust unit basis.

FRED W. TRIEM
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
trivmlaw@alaska.net
(907) 772-3911

+  COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.        22 October 2010
   Hoach v. Klukwan, Inc., et al., — Case No. 1PE-10-067CI                           Page 3 of 16

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 13 of 44

(C)     The Educational Trust (ET) to provide scholarships to beneficiaries and their dependents, initial contribution was $2 million. Earnings were to pay for scholarships not to exceed $135,000 per year. Remaining earnings were to be distributed to the beneficiaries on a pro rata per trust unit basis.

(11)    The Cash contributions made to the trusts were to be invested in accordance with the established Investment Policies, Procedures and Guidelines of each Trust.

(12)    All three trusts provide for a termination of the Trust, by an action of 2/3 of the Trustees and ratification by 50% +1 trust units. The GIT and ET may be terminated or modified on every fifth-year anniversary of the trusts' formation, and the LIT may be terminated or modified beginning in December 2030 and every 5th year following. The window for termination begins on the anniversary dates and lasts for 180 days.

(13)    In April 2010, an advisory vote of beneficiaries was held to determine whether the beneficiaries desired to terminate the GIT Trust. The result of the advisory vote was that 55% of the trust units would vote for termination.

(14)    On each of the first and second fifth-year anniversaries, the Trustees chose not to approve termination or modification of the GIT and the ET, and the issue was never put to the beneficiaries for a vote.

(15)    The next fifth-year anniversary for the GIT and ET is 9 December 2010. The next window for termination of these two trusts begins on 9 December 2010 and lasts for 180 days, ending 7 June 2011.

(16)    Klukwan, Inc. receives a large portion of its current income from the three Trusts through a Contract Employee Agreement ("Services Agreement") that it has with each of the three Trusts.

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.     22 October 2010
Hotch v. Klukwan, Inc., et al. — Case No. 1PE-10-067CI     Page 4 of 16

Attachment B, page 4

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 14 of 44

(17)  Because the Trustees of the three Trusts are also the directors of Klukwan, Inc., the Trustees have an inherent conflict of interest. The continuing existence of Klukwan, Inc., is dependent on the payments from the three Trusts. Additionally, Trustee Ralph Strong is employed by Klukwan, Inc. as are the children of two other trustees. These trustees have a double conflict of interest.

(18)  In order to prop up Klukwan, Inc., and to provide income to Klukwan, Inc., the defendants have been looting the three Trusts.

(19)  The defendants have been using various techniques to loot the three Trusts and to divert funds from the three Trusts to Klukwan, Inc.

(A)  The defendants looted $2 million by making an unauthorized and illegal loan from to the Chilkat Indian Village ("CIV"), a federally recognized village. CIV then paid obligations owed by Klukwan, Inc. or transferred the funds back to a subsidiary of Klukwan, Inc. in return for land, a dock and a vessel, all of which were encumbered by loans.

(B)  Since 2007, the defendant-Trustees qua directors of Klukwan, Inc. have been looting the three Trusts via a Contract Employee Agreement ("service agreement"), charging the trusts exorbitant fees; first taking advances on the fees and then invoicing the fees so as to be paid a second time.

(C)  The Trustees of the three Trusts have improperly caused the three trusts to pay the expenses of recent annual meetings of shareholders of Klukwan, Inc.

(20)  Klukwan, Inc. has a number of wholly-owned subsidiaries including Chilkat Portage Cove Development ("CPCD") and Chilkat Cruises and Tours. Klukwan, Inc. also owns or owned Southcoast Construction, Inc. A number of years ago, Travelers

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.          22 October 2010
Hotch v. Klukwan, Inc., et al., -- Case No. 1PE-10-067CI                               Page 5 of 16

Insurance obtained a judgment against Southcoast Construction and Klukwan, Inc. In 2008, the balance due on the judgment totaled approximately $7 million. The judgment has not yet been fully satisfied. Travelers insurance has recorded its judgment lien against some or all of the real property owned by Klukwan, Inc. and its subsidiaries.

(21)  In mid-2010, the Trustees approved an illegal diversion of money from the Trusts, in the form of a loan to the CIV. The loan proceeds then were used to finance the purchase by the CIV of the CPCD Dock property and the Vessel *Chilkat Express*.

(22)  During the summer months in the years leading up to 2008, CPCD and Chilkat Cruises and Tours operated a tourist cruise vessel, the *Chilkat Express* ("CX"), between Haines and Skagway. CPCD and Chilkat Cruises and Tours were having financial trouble in 2007-08. The 2007 and 2008 operations were improperly and illegally subsidized by the three Trusts via advances on the services agreement.

(23)  In 2007, CPCD owned two parcels of land and a dock in Haines. The land held a building that was used as a staging place for passengers and had a full commercial kitchen where food was sold.

(24)  In 2007, CPCD was heavily indebted to Wells Fargo Bank, which had a security interest in the CPCD dock and property ("the dock loan").

(25)  On several occasions in 2007 and 2008 CPCD considered selling the property, the dock, and the vessel *CX*. The CPCD minutes of 14 June 2008 reflect a decision to sell all of the kitchen equipment to the Klukwan Heritage Center, owned by Chilkat Indian Village ("CIV") a village organized under 25 U.S.C. and recognized by the Federal Government. The CPCD minutes of 24 June 2008 reflect a decision to sell the *CX*.

FRED W. TRIEM
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
trtriem@alaska.net

(907) 772-3911

+  COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, etc.      22 October 2010
   *Hotch v. Klukwan, Inc., et al.* — Case No. 1PB-10-067CI                        Page 6 of 16

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 16 of 44

(26)    The CPCD minutes of 15 August 2008 direct the Chairman, Chad Strong, to contact Bruce Edwards regarding the legality of transferring the Wells Fargo Dock Loan to the three Trusts.

(27)    The CPCD minutes of 14 November 2008 state that a letter will be sent to Wells Fargo asking for a modification of the dock loan; The minutes also state that there is no buyer for the CX; and that the balance on the CX loan is $519,029 with payments currently due in the amount of approximately $120,000.

(28)    The CPCD minutes of 31 January 2009 show that CPCD approved a modification of the dock loan with Wells Fargo. The CPCD minutes of 7 March 2009 show that CPCD approved a Conditional Forbearance and Change in terms Agreement with Wells Fargo Bank on the dock loan. CPCD's minutes of 27 February 2010 state that CPCD agreed to pay off the Wells Fargo note by 18 March 2010.

(29)    The Chilkat Cruises and Tours minutes of 27 June 2009 show a motion to list the CPCD dock and upland property with a real estate broker. The CPCD minutes of 17 July 2009 reflect passage of Resolution CPC-09-01 to list the real property for sale. The two parcels of real property were listed with Haines Real Estate Broker James Studley for $4.5 million.

(30)    The CPCD minutes of 30 November 2009 reflect that Chilkat Indian Village ("CIV") made a counteroffer for only the dock parcel. The counteroffer, signed by Klukwan, Inc. Manager and Director Ralph Strong, offers a term #4: Seller to carry a note on the remaining balance of $2,150,000 at terms and conditions acceptable to both Buyer and Seller.

(31)    On 30 November 2009, neither Klukwan, Inc. nor CPCD had any significant financial reserves.

FRED W. TRIEM
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
trriemlaw@alaska.net

(907) 772-3911

+   COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.        22 October 2010
    Hotch v. Klukwan, Inc., et al. — Case No. 1PE-10-067CI                                Page 7 of 16

Attachment B, page 7

(32)   During the interim the CIV decided it would also be interested in the *Chilkat Express* ("*CX*") and made a separate offer, along with the offer for just the dock parcel of land.

(33)   The CPCD minutes of 23 December 2009 reflect that a further counteroffer was made to the CIV proposing a sale of the dock, dockland and *CX* for $1.7 million with $1.1 million down.

(34)   In January 2010, Klukwan, Inc. approached Kimberly Strong, Chilkat Indian Village IRA president, suggesting that CIV could obtain a loan from the General Income Trust.  In the interim the CIV also investigated the possibility of obtaining a state grant.

(35)   During January or February 2010 the Chilkat Indian Village ("CIV") negotiated and signed a contract for the *CX*, the land and dock for a total of $1.5 million dollars with a closing date of March 15, 2010.

(36)   The General Income Trust minutes of 3 April 2010 show that a motion was made by John Katzeek and seconded by David Berry, Jr. directing management to contact the Chilkat Indian Village (CIV) on Monday, 5 April 2010 to set up a meeting to discuss the CIV business plan and loan.  The motion carried.  All of the seven Trustees, who are defendants in this case and who were in office on 5 April 2010, were in attendance.  These included: David F Berry, Jr., Edward Hotch, Janice Hotch, John Katzeek, Leslie Katzeek, Chad Strong and Ralph Strong.

(37)   The GIT minutes of 7 April 2010 reflect that a motion was made that the General Income Trust grant the Chilkat Indian Village a three-year loan of $2 million with a two-year extension.  The vote was Yes-4, No-1; and the motion carried.  Eventually a

FRED W. TRIEM
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triemlaw@alaska.net

(907) 772-3911

+   COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.          22 October 2010
    *Hotch v. Klukwan, Inc., et al.* — Case No. 1PE-10-067CI                                              Page 8 of 16

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 18 of 44

note was issued for a five-year term with a two-year extension following mutual agreement. The note was signed for the GIT by Trustee Ralph Strong.

(38)   The GIT Trust Agreement specifically denies the trustees the power to loan Trust funds, except to buy publicly traded bonds.

(39)   On 6 May 2010 a legal opinion was obtained from Bob Hume of Landy, Bennett, Blumstein LLP wherein he summarizes: we advise that the GIT CANNOT provide financing, directly or indirectly, for the proposed sale of the land, dock and boat by Chilkat Cruises and Tours to CIV.

(40)   Despite advice of counsel to the contrary, the General Income Trust entered a Loan Agreement signed by Kimberly Strong as CIV President for Chilkat Indian Village on 11 June 2010 and by Ralph Strong director and General Manager of Klukwan, Inc. (and Trustee of the GIT) on 14 June 2010.

(41)   Plaintiff Rosemarie Hotch met with Ralph Strong on 28 July 2010 and was informed at that time that the $2 million dollars had already been released to the Chilkat Indian Village and that there was nothing she could do to stop it. It had already been done. "It's a done deal."

(42)   On 17 June 2010, despite a legal opinion to the contrary [see ¶ (39) above], the Beneficiaries of the General Income Trust were informed that the General Income Trust was making a $2 million dollar loan to the Chilkat Indian Village and that section 13.10 of the GIT agreement gave them the power to do so. Yet, in a management report, dated 28 June 2010, Robert "Bob" Hamilton, president of Klukwan, Inc. wrote: "I [Hamilton] informed CIV that the GIT's attorneys, after reviewing the trust documents and state law, advised the Trustees that the GIT could not make the loan." On 24 June 2010, the plaintiff had written to the Trustees of the GIT asking the Trustees to rescind the loan

FRED W. TRIEM

Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triem@alaska.net

(907) 772-3911

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 19 of 44

because it violates the trust agreement. The plaintiff's letter went unanswered. The Trustees knew that when they loaned GIT funds they were acting against advice of counsel.

(43)  Despite an outcry from the beneficiaries over this violation of the GIT Trust Agreement, the GIT Trustees moved forward with the loan. On 28 June 2010, with Trustee approval, Bob Hamilton sent a response to beneficiary Tanis M. S'eiltin and a separate response to beneficiary Rochene Rowan-Helen, stating that the Trustees had the power to make the loan, and explaining that the loan would benefit the GIT.

(44)  Other beneficiaries complained as well and were met either with silence or with a response similar to that received by Rochene Rowan-Helen.

(45)  Originally, the sale of the property, dock and vessel was to be subject to a three-way closing: CPCD would sell the real property, the dock, and the CX to CIV; the General Income Trust would provide a $2 million dollar loan to the CIV; the CIV would purchase the real property, the dock and the CX; and the CIV would execute a deed of trust in favor of the GIT.

(46)  At the last minute the escrow instructions were changed. The sale became a cash transaction and the only parties to the sale would be the CPCD, who would sell the real property, the dock and the CX and the Chilkat Indian Village who would buy the real property, the dock and the CX for cash. No Deed of Trust was prepared to secure the loan from the GIT to CIV.

(47)  Additionally, the escrow company was required to obtain Disclaimers from all parties (CPCD, GIT and CIV) releasing James M. Studley, Broker Haines Real Estate and Bruce, Baxter and Sullivan, P.C. from liability.

Fred W. Triem
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triemlaw@alaska.net

(907) 772-3911

+  COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.            22 October 2010
   Hotch v. Klukwan, Inc., et al., — Case No. 1PE-10-067CI                                Page 10 of 16

(48)   Haines real estate broker James M. Studley negotiated on behalf of all parties, Klukwan Inc., Chilkat Portage Cove Development, Chilkat Indian Village, and the General Income Trust. Moreover, he was in direct contact with the creditor, Wells Fargo, the lien holder on the *Chilkat Express*. Defendants acquiesced in this conflict of interest.

(49)   Alaska Escrow and Title completed the closing and recorded (1) a Statutory Warranty Deed transferring the "dock property" to the CIV on 30 July 2010; (2) a Bill of Sale conveying the *CX* to the CIV, and (3) a Partial Satisfaction of Judgment on behalf of Travelers Insurance to Southcoast Inc.

(50)   Alaska Escrow and Title also paid off the following CPCD creditors at closing: $558,928 to Wells Fargo for the real property loan, $581,060 to pay off the loan against the *CX*, an undisclosed amount to pay for repairs on the *CX*, and the remaining funds of $274,022 was paid to Traveler's for a partial release of its judgment lien against the real property. The illegally transferred funds ultimately were used to pay the obligations of Klukwan, Inc. and of its subsidiaries.

(51)   The loan from the GIT to the CIV is unsecured. Both the real property and the *Chilkat Express* were transferred free and clear to the CIV. No Deed of Trust has been executed by the *Chilkat Indian Village* in favor of the General Income Trust.

(52)   The $2 million loan from the GIT to the CIV is an unauthorized and illegal transfer of General Income Trust funds. The funds ultimately benefited Klukwan, Inc. because they were used to pay off obligations owed by Klukwan, Inc. and its subsidiaries.

(53)   By approving and benefiting from this loan, the defendants are liable for the illegally transferred funds.

FRED W. TRIEM

Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triemlaw@alaska.net

(907) 772-3911

+   COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, etc.     22 October 2010
   *Hotch v. Klukwan, Inc., et al.*, — Case No. 1PE-10-067CI     Page 11 of 16

Case 1:13-cv-00002-TMB    Document 1-1    Filed 04/04/13    Page 21 of 44

(54)  Klukwan, Inc. directors had an inherent conflict of interest in this transaction because they were on both sides of the transaction. Klukwan, Inc. directors are also Trustees for the GIT, and Klukwan, Inc. management also provided management services for the GIT.

(55)  By approving and facilitating this loan, the defendants breached their fiduciary duties.

(56)  Klukwan, Inc. and the Chilkat Indian Village are liable in assumsit for Trust money had and received — that is, for funds improperly loaned to the Chilkat Indian Village [CIV] and used to retire indebtedness of Klukwan, Inc.

(57)  Defendants used the service agreements as a second or alternative scheme to loot the three Trusts.

(58)  In 2005, Klukwan, Inc. and its subsidiaries had run out of funds and had found themselves deeply in debt. Since that time, Klukwan, Inc. has reported only two sources of income, the monies shared among ANCSA corporations under ANCSA § 7(j) and a Services Contract described below. The § 7(j) funds are inadequate to fund the day-to-day operations of Klukwan, Inc.

(59)  The defendants who were directors of Klukwan, Inc. and who were also Trustees for the three Trusts devised a scheme to loot the three Trusts to fund the day-to-day operations of Klukwan, Inc. The defendants, who as both Trustees of the GIT and also directors of Klukwan, Inc., were on both sides of the transactions; the defendants looted the three Trusts (a) to provide Klukwan with the operating funds and, in turn (b) to furnish perquisites and ongoing employment for themselves.

FRED W. TRIEM
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triemlaw@alaska.net

(907) 772-3911

(60)  The vehicle chosen by the Trustees to loot the Trusts is a "Contract Employee Agreement." In 2005, the Trustees of each of the three Trusts entered into a Contract Employee Agreement ("service agreement") with Klukwan, Inc.  Under the service agreements, Klukwan, Inc. was to provide support services for each of the three Trusts including these services and tasks:

- Preparation of monthly financial statements by the tenth (10th) working day following month end;

- All payroll and payroll reports;

- Accounts receivable;

- Accounts payable;

- Budgeting and audit support;

- Attendance at meetings as required; and

- Other services may be provided as requested by three Trusts.

In return for these limited services, the three Trusts have paid and continue to pay Klukwan, Inc. enormous sums of money.

(61)  The monies that have been transferred from the three Trusts to Klukwan, Inc. under the service agreements or advancements on the service contracts total four million dollars since 2006.  Some of these payments were invoiced directly and some were advances (loans) on future services.

(62)  In any case, the three service agreements (one with each of the three Trusts) provided cover for transfers of enormous sums of money.  During 2007 and 2008, for example, the corpus of the General Income Trust dropped from approximately $ 28.8

Fred W. Triem
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triemlaw@alaska.net

(907) 772-3911

+  COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.        22 October 2010
   Hatch v. Klukwan, Inc., et al., — Case No. 1PE-10-067CI                               Page 13 of 16

million to $17.5 million, in part due to the transfer of millions of dollars under the service agreements.

(63)  Although the three Trusts are no longer paying advances to Klukwan, Inc., the three Trusts continue to transfer more than $200,000 per year out of the Trusts and into the coffers of Klukwan, Inc. through the subterfuge of the service agreements.

(64)  Even though the three Trusts paid millions of dollars in advances on the service contracts, Klukwan, Inc. continues to bill for services every month. Through this mechanism, the defendants deprive the beneficiaries of the three Trusts of between $15,000 and $30,000 per month.

(65)  By approving the transfers from the three Trusts to fund the ongoing operations of their own company, the Trustees have breached their fiduciary duties. If they claim they did not know about these transfers, they have further breached their duty of inquiry.

(66)  The trustees are looting the three trusts by having the trusts pay the expenses of Klukwan, Inc., including the expenses of the annual meeting of shareholders, which is not a burden that the three Trusts are obligated to bear.

(67)  The defendants have used funds belonging to the three Trusts to pay expenses that are rightfully those only of Klukwan, Inc. This practice constitutes an illegal diversion of Trust funds.

(68)  For example only and not by way of limitation on the plaintiff's claims: in July 2010, the expenses of the Klukwan, Inc. annual meeting were borne by the three Trusts.

FRED W. TRIEM
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triemlaw@alaska.net
(907) 772-3911

+  COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.        21 October 2010
   Hotch v. Klukwan, Inc., et al., — Case No. 1PE-10-067CI                              Page 14 of 16

### III.   Plaintiff's Prayer for Relief

The plaintiff, requests the following relief:

(A)   That the Court conduct a trial of the issues and enter judgment in favor of the plaintiff;

(B)   That the court declare that the defendants have breached their fiduciary duties with regard to the General Income Trust, the Long Island Trust and the Education Trust;

(C)   That the court find that the loan from the General Income Trust to the Chilkat Indian Village that was in turn used to retire the indebtedness of Klukwan, Inc. and its subsidiaries was an unauthorized transfer and require that the funds be returned;

(D)   That the court order the CIV to disgorge and refund the monies loaned to the CIV;

(E)   That the court order Klukwan, Inc. to disgorge and refund monies advanced to Klukwan, Inc. on the service agreements;

(F)   That the court order Klukwan, Inc. to disgorge and repay monies expended by the three Trusts on the Klukwan, Inc. annual meetings and on any other expenses that are solely those of Klukwan, Inc.

(G)   That the court remove the defendants from their offices as trustees of the Three trusts.

(H)   That the court reform the three Trust documents to provide for independent trustees for the three Trusts, trustees who are not directors of Klukwan, Inc.

(I)   That the court put the question of whether to terminate the General Income Trust and the Education Trust to a vote of the beneficiaries.

FRED W. TRIEM
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
trieder@alaskalaw
(907) 772-3911

+ COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND FOR PROTECTION OF TRUSTS, ETC.     22 October 2010
 *Hotch v. Klukwan, Inc., et al.* — Case No. 1PE-10-067CI                          Page 15 of 16

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 25 of 44

(J)    That, in the alternative, the court terminate the General Income Trust and the Education Trust and distribute the remaining funds to the beneficiaries

(K)    That the court issue an injunction prohibiting any further disbursements of GIT Trust monies to Klukwan, Inc. or any disbursement of GIT Trust monies to beneficiaries unless the GIT is terminated pursuant to § 7 of the trust fund documents.

(L)    That the court find that the defendants are liable for the losses to the Trust corpus caused by the defendants' breach.

(M)    That the Court award damages, in an amount in excess of $100,000, the precise amount to be established at trial, for the losses suffered by the Trusts;

(N)    That the Court award punitive damages, the precise amount to be determined at trial to compensate the plaintiff for the outrageous misconduct, callous indifference, and gross negligence of the defendants;

(O)    That defendants be required to pay: the judgment for damages, prejudgment interest on the damage award, the plaintiff's litigation costs, and attorneys' fees that are incurred in this action; and

(P)    That the Court award such further and additional relief as may seem to the Court just and proper under the circumstances.

Respectfully submitted this 22nd day of October 2010 at Petersburg, Alaska.

FRED W. TRIEM
Attorney at Law
Box 129
Petersburg, Alaska
99833-0129
triemlaw@alaska.net

(907) 772-3911

*Fred W. Triem*

Fred W. Triem
Alaska Bar No. 7912140
Attorney for Plaintiff

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 26 of 44

# Jim Sheehan

| | |
|---|---|
| **From:** | Ralph <ralph.strong@klukwan.com> |
| **Sent:** | Friday, February 04, 2011 11:24 AM |
| **To:** | Jim Sheehan |
| **Subject:** | FW: Klukwan, Inc. / Claim Submitted to XL |
| **Attachments:** | IR_def_of_insured110001.pdf |

Jim, this was the last communication we had with Chris Bader, the broker for our insurance.

**From:** Ralph [mailto:ralph.strong@klukwan.com]
**Sent:** Friday, February 04, 2011 11:15 AM
**To:** 'Jim Sheehan'
**Subject:** FW: Klukwan, Inc. / Claim Submitted to XL

Jim, more info on insurance.

**From:** Chris Bader [mailto:Chris_Bader@ajg.com]
**Sent:** Thursday, November 11, 2010 9:33 AM
**To:** ralph.strong@klukwan.com
**Cc:** Bruce Thiffault
**Subject:** Klukwan, Inc. / Claim Submitted to XL

Ralph,

I called Swett & Crawford to ask about the conversation they had with the XL claims adjuster. XL is denying coverage on the policy for the recent lawsuit due to an insured versus insured exclusion. The following information was provided by Swett & Crawford:

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Attached is the portion from the Management Liability section of the policy showing the definition of Insured and the Insured vs Insured exclusion. Additional information for why this exclusion exists is included in the information below:

Most insurance policies covering directors' and officers' liability exclude coverage for cases brought by one insured against other insureds. The exclusion is intended to prevent collusive lawsuits, such as claims brought by a company against its directors to recover damages from a bad business decision. The exclusion generally bars suits brought by or on behalf of the company or any of its officers or directors

This exclusion was created only after a number of corporations successfully litigated and recovered against their own directors and officers under broad D&O policies. As a result, carriers have sought to limit coverage in those circumstances and designed policies denying coverage to directors and officers who were being sued by the corporation which they served.

The reasons for the exclusion are based on two common concepts: first, there should be no coverage where an insured sues itself, and second, D&O insurance should not insure the financial results of a company.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
~~~~~~~~~

Bruce and I will give you a call to discuss.

Thanks,

1

Attachment C, page 1

Chris Bader
Arthur J. Gallagher Risk Management Services, Inc. (FIS)
2825 Eastlake Ave. E., #110
Seattle, WA 98102
Direct Phone: (206) 607-0925 / Fax: (206) 270-3409
email: chris_bader@ajg.com
cell: (206) 890-9518

California Non-Resident License No. 0G57459

# MANAGEMENT AND COMPANY LIABILITY COVERAGE PART

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer), including the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:

## I. INSURING AGREEMENTS

A. The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

B. The Insurer shall pay on behalf of the **Company Loss**:

   1. which the **Company** is required or is permitted to pay as indemnification to the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons**; or

   2. resulting from a **Claim** first made against the **Company**; during the **Policy Period**, or, if applicable, the Optional Extension Period, for a **Wrongful Act**.

## II. DEFINITIONS

A. "**Claim**," as defined in GENERAL DEFINITIONS C. of the General Terms & Conditions of this Policy, shall include, for purposes of this Coverage Part, a formal civil, criminal, administrative, or regulatory investigation of an **Insured Person** which is commenced by the filing or issuance of notice of charges, formal investigative order or similar document specifically identifying in writing such **Insured Person** as a person against whom a proceeding as described in GENERAL DEFINITIONS C. 2. or 3. of the General Terms & Conditions of this Policy may be commenced.

B. "**Insured**" means the **Insured Persons** and the **Company**.

C. "**Insured Person**" means:

   1. any past, present or future director or officer, or member of the Board of Managers, of the **Company**;

   2. any past, present or future employee of the **Company**;

   3. any managing member or manager of any **Company** organized as a limited liability company; and

   4. those persons serving in a functionally equivalent role as above for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States; and

   5. any individual identified above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent or governor, or in an equivalent executive position, of a **Non-Profit Entity**.

   6. an individual identified in C. 1., 3. or 4., above who, at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of a director, officer, member of Board of Managers, managing member or manager, regardless of the name or title by which such position is designated, of a **Joint Venture**.

D. "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary**, during any time in which the **Parent Company**, either directly or through one or more **Subsidiary(s)**:

PS 71 01 07 07            © 2007, XL America, Inc.            Page 1 of 5

Attachment C, page 3

threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of nuclear material or nuclear waste, this exclusion D. will not apply;

E. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding which was brought prior to the applicable Pending And Prior Proceeding Date set forth in ITEM 7.(a) of the Declarations;

F. brought by, or on behalf of, or at the direction of any **Insured**, except and to the extent such **Claim** is brought:

   1. derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, active participation or intervention of any **Insured**;

   2. by the Bankruptcy Trustee or Examiner of the **Company** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company**;

   3. in the form of a cross-claim, third party claim or other claim for contribution or indemnity by an **Insured Person** which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this Policy; or

   4. by an **Insured Person** of the **Company** pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder;

   5. for the actual or alleged wrongful termination of an **Insured Person** as defined in Section II. Definition C. 1., 3. or 4. only; or

   6. by an **Insured Person**:

      a. who has not served as a director, officer, member of the Board of Managers of the **Company** for at least three (3) years prior to the date such **Claim** is first made; or

      b. who is an **Insured Person** solely by reason of his or her status as a current or former employee of the **Company**,

      who is acting independently of, and without the solicitation, assistance, participation or intervention of any other **Insured Person** or the **Company**.

G. for any actual or alleged liability of the **Company** under any express contract or agreement. With respect to this EXCLUSION G., an "express contract or agreement" is defined as an actual agreement of the parties, the terms of which are openly set forth or declared at the time of making in clear or distinct language. This EXCLUSION G. will apply only to the coverage available to the **Company** under INSURING AGREEMENT B. 2.;

H. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in his or her capacity as a director, officer, employee, member of Board of Managers, managing member or manager of, or in an equivalent position with respect to, any entity other than the **Company**, **Non-Profit Entity** or **Joint Venture**;

I. for any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under this Policy; provided that this EXCLUSION I. is not intended, however, nor shall it be construed, to apply to a **Claim** against an **Insured Person** to the extent that such **Claim** is for a **Wrongful Act** by such **Insured Person** in connection with the management or supervision of any division, **Subsidiary** or group of the **Parent Company** offering any of the aforementioned services;

J. for any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any state "blue sky" securities law, or any other federal, state or local securities law, including any amendments thereto, or any rule or regulation promulgated thereunder or any similar common law imposing liability in connection

Case 1:13-cv-00002-TMB    Document 1-1    Filed 04/04/13    Page 30 of 44



100 Constitution Plaza
13th Floor
Hartford CT 06103
USA
Phone +1 860 246 1863
Fax    +1 860 548 9572
www.xlinsurance.com

Claims

*Sent electronic mail*

February 22, 2011

Ralph Strong
Klukwan, Inc.
ralph.strong@klukwan.com

RE:        INSURED:        Klukwan, Inc.
            POLICY No.:      ELU114455-09
            REFERENCE No.:  ELU016803
            SUBJECT:       Hotch v. Klukwan, et al.

Dear Mr. Strong,

This letter is in follow-up to our prior correspondence of November 3, 2010 regarding the above-referenced matter. XL is the Claims Manager for XL Specialty Insurance Company ("XL Specialty"). We are monitoring this matter on their behalf. We ask that you use the Reference Number indicated above in all future communications regarding this matter.

Correspondence dated October 23, 2010 from Fred Triem, counsel for the Plaintiff, provided a copy of a complaint ("the Complaint") in a lawsuit styled *Rosemarie Hotch v. Klukwan, Inc.* ("the Insured"), *et al.* filed on or about October 22, 2010 in the Superior Court for the State of Alaska First Judicial District at Petersburg. Also named as Defendants are the Chilkat Indian Village and the currently sitting board members with the exception of the Plaintiff. By way of background, the Complaint alleges that in 1995, Klukwan established three settlement trusts: the General Income Trust ("GIT"); Long Island Trust ("LIT"); and the Klukwan Education Trust ("ET") (collectively, "the Trusts") for the purposes of paying Klukwan's shareholders, funding for logging, and providing scholarships. Klukwan's Board members were trustees of the Trusts.

The Plaintiff alleges that Klukwan's continued existence is supported by payments from the Trusts, which creates a conflict of interest for the board members, in their dual capacity as Trustees. The Defendants have allegedly been looting the Trusts by making unauthorized loans and payments, as well as paying exorbitant fees and advances in the amount of $15,000 - $30,000 a month pursuant to a service agreement. The Complaint alleges that the individual Directors have breached their fiduciary duties by using funds that were improperly obtained from the Trusts for the benefit of Klukwan. The Plaintiff seeks an order that Klukwan disgorge and refund monies loaned to Chilkat Indian Village, paid in connection with Klukwan's shareholder meeting, and advanced under the service agreement; an order that the Trusts either be reformed or terminated by vote of their beneficiaries; that the court find that the Defendants are liable for losses to the Trust corpus caused by their breach. The Plaintiff also asks that the Defendant be required to pay: judgment for damages, prejudgment interest, punitive damages, fees and costs, and any other relief that the Court deems just and proper.

As you may be aware, XL Specialty issued to Klukwan ("Klukwan" / "the Insured"), Private Company Management and Liability and Company Reimbursement Policy Number ELU114455-09 for the Policy Period of October 31, 2009 to October 31, 2010. The Policy provides a $2,000,000 Maximum Aggregate Limit of Liability for the Policy Period, including Defense Expenses, for all Claims under Management Liability and Company Reimbursement Coverage Part ("the D&O Coverage Part"). The Policy also provides a $2,000,000 Maximum Aggregate Limit of Liability for the Policy Period, including Defense Expenses, for all Claims under Employment Practices Liability Coverage Part ("the EPL Coverage Part"). And the Policy provides a $1,000,000 Maximum Aggregate Limit of

Greenwich Insurance Company, Indian Harbor Insurance Company, XL Insurance America, Inc., XL Insurance Company
of New York, Inc., XL Select Insurance Company, XL Specialty Insurance Company

Liability for the Policy Period, including Defense Expenses, for all Claims under the Pension and Welfare Benefit Plan Fiduciary Liability Coverage Part ("the FID Coverage Part").[1] There is a $3,000,000 Maximum Aggregate Limit of Liability, including Defense Expenses, for all Claims under the Policy. Unless indicated otherwise, the referenced Policy Sections apply to the D&O Coverage Part.

However, the Policy does not appear to afford any coverage this matter pursuant to Exclusion F. Exclusion F., as amended by Endorsement No. 7, in pertinent part provides that there is no coverage for any Claim brought by or on behalf of or at the direction of any Insured, except to the extent such Claim is brought:

(1) derivatively by a security holder of the Company who, when such Claim is made and maintained, is acting independently of and without the solicitation, assistance, active participation or intervention of any Insured;

(2) by the Bankruptcy Trustee or Examiner of the Company or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company;

(3) in the form of a cross-claim, third party claim or other claim for contribution or indemnity by an Insured Person, which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy;

(4) by an Insured Person of the Company pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder; 5. for the actual or alleged wrongful termination of an Insured Person as defined in Section II Definition C. 1., 3., or 4., only; or 6. by an Insured Person:

   a. who has not served as a director, officer, member of the Board of Managers of the Company for at least three years prior to the date of such Claim is first made; or

   b. who is an Insured Person solely by reason of his or her status as a current or former employee of the Company; who is acting independently of, and without the solicitation, assistance, participation, or intervention of any other Insured Person of the Company.

(5) by an Insured Person:

   a. who has not served as a director, officer, member of the Board of Managers of the Company for at least (3) years prior to the date such Claim is first made; or

   b. who is an Insured Person solely by reason of his or her status as a current or former employee of the Company;

   who is acting independently of, and without the solicitation, assistance, participation or intervention of any other Insured Person or the Company.

An Insured is defined to include Klukwan, its Subsidiaries (collectively, "the Company"),[2] and Insured Persons. Definition C. defines Insured Persons in pertinent part as any past, present or future director or officer, or member of the Board of Managers, of the Company. Based on our

---

[1] Based on our review of the allegations in the Complaint, it does not appear that either the EPL Coverage Part or the FID Coverage Part is potentially impacted based on their respective Definitions of Wrongful Acts. Accordingly, we will not be discussing coverage thereunder.
[2] Endorsement No. 9 further amends the Definition of Company to include the Educational Trust, the General Income Trust and the Long Island Trust.

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 32 of 44

review of the Complaint, we note that the Plaintiff is a sitting member of the Board of Directors of Klukwan, and as such qualifies as an Insured Person. Accordingly, because the Claim is brought by, or on behalf of, or at the direction of an Insured, and none of the aforementioned exceptions to the Exclusion I. apply, there is no coverage for this matter.

Notwithstanding the foregoing, we also direct your attention to Exclusion A., which in relevant part provides that Greenwich will not pay for any Loss or provide a defense, for matters brought about or contributed to in fact by any:

    (1) intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

    (2) profit or remuneration gained by any Insured to which such Insured is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding. XL Specialty also reserves all of its rights with regard to the potential applicability of Exclusion A.

For the reasons set forth above it does not appear as though there is coverage for any loss arising from or in any way relating to this matter. As we believe this Claim is excluded in its entirety, we are not providing any additional comments as to other coverage issues that might exist. We expressly reserve all rights under the Policy and available at law including but not limited to the right to disclaim coverage on additional and alternative basis, such as the definitions of Loss and Wrongful Acts, as other terms, conditions, exclusions, endorsements and provisions of the Policy are found to be applicable.

We will gladly review any additional information or evidence that you believe will aid us in reaching a different conclusion. Please do not hesitate to contact me if you should have any questions or wish to discuss any aspect of this letter.

Very truly yours,

Allison M. Bradford
Ph: (860) 293-6222
Fax: (860) 722-9913
allison.bradford@xlgroup.com

cc:    Kirsten Berg
       Swett & Crawford
       kirsten_berg@swett.com

# SIMPSON, TILLINGHAST & SORENSEN, P.C.

ONE SEALASKA PLAZA, SUITE 300 · JUNEAU, ALASKA 99801
TELEPHONE: 907-586-1400 · FAX: 907-586-3065

*First Class Mail*

September 2, 2011

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103

Re:  Notice of Claim
Policy No. ELU114455-09
Renewal No. ELU108069-08

To Whom It May Concern:

Our firm represents Klukwan, Inc. and seven current and past members of the Klukwan, Inc. Board of Directors. The purpose of the letter is to respond to the attached denial of Notice of Claim, and demand that XL Professional Insurance defend and indemnify Klukwan, Inc. ("KLI") and the current and past members of the KLI Board of Directors named as defendants in the litigation styled: *Rosemarie Hotch v. Klukwan, Inc.*, Case No. 1PE-10-067.

In 1995, KLI, the settlor, established three KLI Alaska Native Claims Settlement Act ("ANCSA") Settlement Trusts – the Long Island Trust, the Educational Trust and the General Income Trust (hereinafter sometimes referred to together as the "KLI Trusts") under ANCSA of 1971, as amended (43 U.S.C. §1601, et seq.).

The purpose of the KLI Trusts is to create a fund for investment and educational benefits to KLI Shareholders, and to provide a source of regular distributions to KLI Shareholders. Members of the KLI Board of Directors make up the KLI Trusts' Board of Trustees.

On October 22, 2010, Plaintiff Rosemarie Hotch, a newly elected KLI director, filed a lawsuit against Chilkat Indian Village, KLI and several current and past members of the KLI Board (herein, the "KLI Defendants"). Plaintiff's Second Amended Complaint is attached. The lawsuit asserts, among other allegations, that the KLI Defendants have taken certain prohibited actions with regard to the KLI Settlement Trusts. The specific allegations in Plaintiff's Complaint include, but are not limited to the following monetary damages:

- Approximately $2 million associated with an alleged unauthorized loan from the KLI Trusts to the Chilkat Indian Village;

- Approximately $3.5 million associated with an alleged unauthorized prepayment of funds from the KLI Trusts to KLI;

---

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 34 of 44

- Approximately $800,000 associated with an alleged unauthorized payment of funds to KLI for proceeds of timber sales, which allegedly the KLI Trusts are entitled to;

- Approximately $2 million associated with an alleged transfer of funds in violation of the Trusts Agreements; and

- Approximately $5 million associated with alleged unauthorized distributions to KLI Trusts Beneficiaries, which allegedly violated the terms of the KLI Trusts Agreement.

The KLI Defendants have already incurred costs and attorney's greater than $120,000.00 associated with the defense of Plaintiff's claims. I have attached the Court's decisions with regard to dispositive motions filed by Plaintiff.

Pursuant to the attached denial of Notice of Claim, dated November 11, 2010, XL Professional Insurance denied the KLI Defendants claim on the ground that Plaintiff is within the insured versus insured exclusion. This exclusion is discussed on page 3, section F of the Management and Company Liability Coverage Part of the attached XL Professional Insurance Policy. Further, XL Professional Insurance email to the KLI Defendants says:

Policies covering directors' and officers' liability exclude coverage for cases brought by one insured against other insured. The exclusion is intended to prevent collusive lawsuits, such as claims brought by a company against its directors or to recover damages from a bad business decision. The exclusion generally bars suits brought by or on behalf of the company or any of its officers or directors.

The exclusion was created only after a number of corporations successfully litigated and recovered against their own directors and officers under broad D&O policies. As a result, carriers have sought to limit coverage in those circumstances and designed policies denying coverage to directors and officers who were being sued by the corporation which they served.

The reasons for the exclusion are based on two common concepts: first, there should be no coverage where an insured sues itself, and second, D&O insurance should not insure the financial results of a company.

XL Professional Insurance's rationale for denying coverage under the KLI Defendants' policy is misplaced for at least two reasons. First, Plaintiff falls within the exception to the inclusion discussed on page 3, section F6 of the Management and Company Liability Coverage Part of the attached XL Professional Insurance Policy. And, Second, Plaintiff does not fall within the XL Professional's above rational for the exclusion of the insured versus an insured.

Case 1:13-cv-00002-TMB   Document 1-1   Filed 04/04/13   Page 35 of 44

Section F6 of the Management and Company Liability Coverage Part of the attached XL Professional Insurance Policy, discusses the exception to the exclusion of insured versus insured claims. Section F6 says:

> [XL Professional Insurance] shall not be liable to make any payment for Loss, and shall have no duty to defend or pay Defense Expenses, in connection with any Claim made against an Insured:

> ***

> F.       brought by, or on behalf of, or at the direction of any Insured, except to the extent such Claim is brought:

>     6.       by an Insured Person:

>         a.  who has not served as a director, officer, member of the Board of Managers of the Company for at least three (3) years prior to the date such Claim is first made....

>     who is acting independently of, and without the solicitation, assistance, participation or intervention of any other insured Person or the Company.

Plaintiff became a member of the KLI Board in July 2010. Therefore, she is well within the three year limitation described in Section F6. Plaintiff has served for less than one year, of the three years required by the exclusion.

If it is XL Professional Insurance's interpretation that Section F6 was intended to exclude directors until three years after their removal from the KLI Board, that would be contrary to the KLI Defendants reasonable understanding of this provision when they signed XL Professional Insurance's Policy. Although the KLI Defendants believe the Section F6 of the attached policy clearly provides coverage, it should be noted by XL Professional Insurance, that under Alaska case law, when a clause in an insurance policy is ambiguous, the court will accept the interpretation that most favors the insured.

Further, Plaintiff doesn't fall within the rationale provided by XL Professional Insurance for denial of the coverage. This is not a situation in which an insured is suing itself, or the insurer is paying the financial result of the insured. As can be seen from the attached materials, there is no collusion among the KLI Board, and the matter is a genuine and hotly contested adversarial one.

Please review the attached pleadings to help give you a better understanding of the facts associated Plaintiff's claims against the KLI Defendants. This letter is a good faith effort to resolve issues associated with XL Professional Insurance's denial of the KLI Defendants' claim for

Attachment E, page 3

XL Professional Insurance
September 2, 2011
Page 4

indemnity and defense costs and attorney's fees associated with Plaintiff's claims.  If you have any further questions on these issues, please email or call.

Sincerely,
**SIMPSON, TILLINGHAST & SORENSEN, P.C.**

James J. Sheehan

cc:     Client (Ralph.Strong@Klukwan.com)
        Chris Bader (Chris_Bader@ajg.com)
        Lisa Burbage (lisa_burbage@swett.com)
        Mark Smith (mark_smith@swett.com)

Enclosures: As noted



**XL Group**
Insurance
Reinsurance

RECEIVED

APR 2 3 2012

Simpson, Tillinghast,
Sorensen & Sheehan, P.C

100 Constitution Plaza
Hartford, CT 06103
USA
Phone  +1 860 246 1863
Fax     +1 860 548 9572
xlgroup.com

**Claims**

April 18, 2012

James Sheehan, Esq.
Simpson Tillinghast & Sorenson, P.C.
One Sealaska Plaza, Suite 300
Juneau, AK 99801

RE:         INSURED:         Klukwan, Inc.
             POLICY No.:      ELU114455-09
             REFERENCE No.:  ELU016803
             SUBJECT:      <u>Hotch v. Klukwan, et al.</u>

Dear Mr. Sheehan,

We are in receipt of your correspondence dated September 2, 2011 requesting that XL Specialty reconsider its declination of coverage as set forth in our February 22, 2011 correspondence and providing additional information in connection therewith.[1]  As you may be aware, XL is the claims manager for XL Specialty Insurance Company ("XL Specialty").  We have addressed this to you as the representative for receipt of insurance materials.  If you are not the appropriate person to whom such materials should be directed or if you would like any other party not already copied on this letter to receive future communications, please advise accordingly.  Please also ask take note of the reference number indicated above and kindly refer to that number in all future correspondence regarding this matter, as well as note that this letter is intended to supplement and incorporate, not replace our prior letter of February 22, 2011.

By way of background, prior correspondence dated October 23, 2010 from Fred Triem, counsel for the Plaintiff, provided a copy of a complaint ("the Complaint") in a lawsuit styled *Rosemarie Hotch v. Klukwan, et al.*, filed on or about October 22, 2010 in the Superior Court for the State of Alaska First Judicial District at Petersburg ("the Lawsuit").  In addition to Klukwan, also named as Defendants were: Chilkat Indian Village,[2] David Berry, Jr., Edward Hotch, Janice Hotch, John Katzeek, Chad Strong and Ralph Strong (collectively, "the Defendants") in their capacity as sitting members of the Board of Directors of Klukwan and the Educational Trust, the General Income Trust, the Long Island Trust.  The Plaintiff, herself a sitting member of the Insured's Board of Directors, generally alleged that the

---

[1] In your September 2, 2011 correspondence you reference on Page 2 an "XL Professional Insurance email to the KLI Defendants."  We are uncertain what electronic correspondence you are referring to and reserve all rights in connection therewith.  In addition, we acknowledge receipt of the following documents included with your September 2, 2011 correspondence: the Second Amended Complaint; Memorandum and Order re: Motions for Preliminary Injunction; Memorandum and Order re: Plaintiff's First Motion for Partial Summary Judgment; and Memorandum and Order re: Plaintiff's Second Motion for Partial Summary Judgment for a Preliminary Injunction.

[2] Our understanding is that Chilkat Indian Village does not qualify as an Insured, nor is it an entity included in your September 2, 2011 request for reconsideration and tender of indemnity and defense correspondence.  To the extent that this understanding is incorrect, we ask that you advise us in writing at your earliest convenience and note that XL Specialty reserves all rights with respect to this request and otherwise.

Greenwich Insurance Company, Indian Harbor Insurance Company, XL Insurance America, Inc.,
XL Insurance Company of New York, Inc., XL Select Insurance Company, XL Specialty Insurance Company

Attachment F, page 1

Defendants were breaching their fiduciary duties in connection with the management of the Educational Trust, the General Income Trust and the Long Island Trust.

The Policy, subject to its other terms and conditions, provides coverage for Claims first made during the Policy Period for Wrongful Acts against Insureds. Definition of B. of the Management and Company Liability Coverage Part of the Policy ("the D&O Coverage Part") and Endorsement No. 9 define an Insured as: Klukwan, its Subsidiaries, the Educational Trust, the General Income Trust, the Long Island Trust (collectively, "the Company"), and Insured Persons. Definition C. of the D&O Coverage Part defines an Insured Person in relevant part as any past, present or future director or officer, or member of the Board of Managers, of the Company. As such, Klukwan as an entity included within the Definition of Company, and Rosemarie Hotch, David Berry, Jr., Edward Hotch, Janice Hotch, John Katzeek, Chad Strong and Ralph Strong, as past, present or future directors or officers, or members of the Board of Managers of Klukwan, all qualify as Insureds under the Policy.

However, coverage is also limited and/or precluded pursuant to other Policy terms and conditions. In this vein, we again direct the Insured's attention to the plain language of Exclusion F. of the D&O Coverage Part, as amended by Endorsement No. 7 ("the Insured vs. Insured Exclusion"), which applies to preclude coverage in its entirety for this matter. The Insured vs. Insured Exclusion in pertinent part provides that there is no coverage for any Claim brought by or on behalf of or at the direction of any Insured. Because Rosemarie Hotch is an Insured asserting claims against other Insureds, the Insured vs. Insured Exclusion bars coverage for this matter in entirety. As you note in your September 2, 2011 correspondence, the Policy also includes exceptions to this Exclusion. In pertinent part, you raise Exception 5.a., which provides that the Insured vs. Insured Exclusion will not apply to the extent a Claim is brought:

   . . .

   5.   by an Insured Person:

      a.   who has not served as a director, officer, member of the Board of Managers of the Company for at least three (3) years prior to the date such Claim is first made; or

   . . .

   who is acting independently of, and without the solicitation, assistance, participation or intervention of any other Insured Person or the Company.

We note the Complaint was filed on October 22, 2010 and Rosemarie Hotch was a sitting Board member as of July 31, 2010. In order for Exception 5.a. to apply, Ms. Hotch would have to have been a sitting Board member prior to October 22, 2007, which is three years prior to the date the Complaint was filed. Because Ms. Hotch was a sitting member of the Board as of the filing of the Lawsuit, Exception 5.a. to the Insured vs. Insured Exclusion does not apply. As none of the other Exceptions to the Exclusion apply, the Insured vs. Insured Exclusion operates to preclude coverage for this matter in its entirety.

Accordingly, we think it is appropriate to decline coverage for the Complaint and incorporate by reference herein the declination of coverage set forth in our February 22, 2011 correspondence, a copy of which we have included for your easy reference.

XL Specialty continues to reserve all rights available to it under the Policy, at law, and otherwise in connection with this matter, including but not limited to the right to amend or supplement this letter as circumstances may warrant.

Please do not hesitate to contact me if you should have any questions about this letter or any additional information of which we should be aware.

Very truly yours,

Allison M. Bradford
Senior Claims Counsel
Ph: (860) 293-6222
Fax: (860) 722-9446
allison.bradford@xlgroup.com

cc:     Ralph Strong
        Klukwan, Inc.
        Ralph.Strong@klukwan.com

        Chris Bader
        Arthur J. Gallagher & Co.
        Chris_Bader@ajg.com

        Lisa Burbade
        Swett & Crawford
        lisa_burbage@swett.com

        Mark Smith
        Swett & Crawford
        mark_smith@swett.com

Attachment F, page 3



100 Constitution Plaza
13th Floor
Hartford CT 06103
USA
Phone +1 860 246 1863
Fax    +1 860 548 9572
www.xlinsurance.com

Claims

*Sent electronic mail*

February 22, 2011

Ralph Strong
Klukwan, Inc.
ralph.strong@klukwan.com

RE:   INSURED:      Klukwan, Inc.
      POLICY No.:    ELU114455-09
      REFERENCE No.: ELU016803
      SUBJECT:      Hotch v. Klukwan, et al.

Dear Mr. Strong,

This letter is in follow-up to our prior correspondence of November 3, 2010 regarding the above-referenced matter.  XL is the Claims Manager for XL Specialty Insurance Company ("XL Specialty").  We are monitoring this matter on their behalf.  We ask that you use the Reference Number indicated above in all future communications regarding this matter.

Correspondence dated October 23, 2010 from Fred Triem, counsel for the Plaintiff, provided a copy of a complaint ("the Complaint") in a lawsuit styled *Rosemarie Hotch v. Klukwan, Inc.* ("the Insured"), *et al.* filed on or about October 22, 2010 in the Superior Court for the State of Alaska First Judicial District at Petersburg. Also named as Defendants are the Chilkat Indian Village and the currently sitting board members with the exception of the Plaintiff.  By way of background, the Complaint alleges that in 1995, Klukwan established three settlement trusts: the General Income Trust ("GIT"); Long Island Trust ("LIT"); and the Klukwan Education Trust ("ET") (collectively, "the Trusts") for the purposes of paying Klukwan's shareholders, funding for logging, and providing scholarships. Klukwan's Board members were trustees of the Trusts.

The Plaintiff alleges that Klukwan's continued existence is supported by payments from the Trusts, which creates a conflict of interest for the board members, in their dual capacity as Trustees.  The Defendants have allegedly been looting the Trusts by making unauthorized loans and payments, as well as paying exorbitant fees and advances in the amount of $15,000 - $30,000 a month pursuant to a service agreement. The Complaint alleges that the individual Directors have breached their fiduciary duties by using funds that were improperly obtained from the Trusts for the benefit of Klukwan. The Plaintiff seeks an order that Klukwan disgorge and refund monies loaned to Chilkat Indian Village, paid in connection with Klukwan's shareholder meeting, and advanced under the service agreement; an order that the Trusts either be reformed or terminated by vote of their beneficiaries; that the court find that the Defendants are liable for losses to the Trust corpus caused by their breach.  The Plaintiff also asks that the Defendant be required to pay: judgment for damages, prejudgment interest, punitive damages, fees and costs, and any other relief that the Court deems just and proper.

As you may be aware, XL Specialty issued to Klukwan ("Klukwan" / "the Insured"), Private Company Management and Liability and Company Reimbursement Policy Number ELU114455-09 for the Policy Period of October 31, 2009 to October 31, 2010.  The Policy provides a $2,000,000 Maximum Aggregate Limit of Liability for the Policy Period, including Defense Expenses, for all Claims under Management Liability and Company Reimbursement Coverage Part ("the D&O Coverage Part").  The Policy also provides a $2,000,000 Maximum Aggregate Limit of Liability for the Policy Period, including Defense Expenses, for all Claims under Employment Practices Liability Coverage Part ("the EPL Coverage Part").  And the Policy provides a $1,000,000 Maximum Aggregate Limit of

Greenwich Insurance Company, Indian Harbor Insurance Company, XL Insurance America, Inc., XL Insurance Company
of New York, Inc., XL Select Insurance Company, XL Specialty Insurance Company

Liability for the Policy Period, including Defense Expenses, for all Claims under the Pension and Welfare Benefit Plan Fiduciary Liability Coverage Part ("the FID Coverage Part").[1] There is a $3,000,000 Maximum Aggregate Limit of Liability, including Defense Expenses, for all Claims under the Policy. Unless indicated otherwise, the referenced Policy Sections apply to the D&O Coverage Part.

However, the Policy does not appear to afford any coverage this matter pursuant to Exclusion F. Exclusion F., as amended by Endorsement No. 7, in pertinent part provides that there is no coverage for any Claim brought by or on behalf of or at the direction of any Insured, except to the extent such Claim is brought:

(1) derivatively by a security holder of the Company who, when such Claim is made and maintained, is acting independently of and without the solicitation, assistance, active participation or intervention of any Insured;

(2) by the Bankruptcy Trustee or Examiner of the Company or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company;

(3) in the form of a cross-claim, third party claim or other claim for contribution or indemnity by an Insured Person, which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy;

(4) by an Insured Person of the Company pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder; 5. for the actual or alleged wrongful termination of an Insured Person as defined in Section II Definition C. 1., 3., or 4., only; or 6. by an Insured Person:

    a. who has not served as a director, officer, member of the Board of Managers of the Company for at least three years prior to the date of such Claim is first made; or

    b. who is an Insured Person solely by reason of his or her status as a current or former employee of the Company; who is acting independently of, and without the solicitation, assistance, participation, or intervention of any other Insured Person of the Company.

(5) by an Insured Person:

    a. who has not served as a director, officer, member of the Board of Managers of the Company for at least (3) years prior to the date such Claim is first made; or

    b. who is an Insured Person solely by reason of his or her status as a current or former employee of the Company;

who is acting independently of, and without the solicitation, assistance, participation or intervention of any other Insured Person or the Company.

An Insured is defined to include Klukwan, its Subsidiaries (collectively, "the Company"),[2] and Insured Persons. Definition C. defines Insured Persons in pertinent part as any past, present or future director or officer, or member of the Board of Managers, of the Company. Based on our

---

[1] Based on our review of the allegations in the Complaint, it does not appear that either the EPL Coverage Part or the FID Coverage Part is potentially impacted based on their respective Definitions of Wrongful Acts. Accordingly, we will not be discussing coverage thereunder.

[2] Endorsement No. 9 further amends the Definition of Company to include the Educational Trust, the General Income Trust and the Long Island Trust.

review of the Complaint, we note that the Plaintiff is a sitting member of the Board of Directors of Klukwan, and as such qualifies as an Insured Person. Accordingly, because the Claim is brought by, or on behalf of, or at the direction of an Insured, and none of the aforementioned exceptions to the Exclusion I. apply, there is no coverage for this matter.

Notwithstanding the foregoing, we also direct your attention to Exclusion A., which in relevant part provides that Greenwich will not pay for any Loss or provide a defense, for matters brought about or contributed to in fact by any:

(1) intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2) profit or remuneration gained by any Insured to which such Insured is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding. XL Specialty also reserves all of its rights with regard to the potential applicability of Exclusion A.

For the reasons set forth above it does not appear as though there is coverage for any loss arising from or in any way relating to this matter. As we believe this Claim is excluded in its entirety, we are not providing any additional comments as to other coverage issues that might exist. We expressly reserve all rights under the Policy and available at law including but not limited to the right to disclaim coverage on additional and alternative basis, such as the definitions of Loss and Wrongful Acts, as other terms, conditions, exclusions, endorsements and provisions of the Policy are found to be applicable.

We will gladly review any additional information or evidence that you believe will aid us in reaching a different conclusion. Please do not hesitate to contact me if you should have any questions or wish to discuss any aspect of this letter.

Very truly yours,

Allison M. Bradford
Ph: (860) 293-6222
Fax: (860) 722-9913
allison.bradford@xlgroup.com

cc:     Kirsten Berg
        Swett & Crawford
        kirsten_berg@swett.com

STATE OF ALASKA
DEPARTMENT OF COMMERCE, COMMUNITY AND ECONOMIC DEVELOPMENT
DIVISION OF INSURANCE
JUNEAU, ALASKA

CERTIFICATE OF SERVICE

I, Bret S. Kolb, Director of Insurance, certify that I have been served with the attached document(s): SUMMONS AND NOTICE TO BOTH PARTIES OF JUDICIAL ASSIGNMENT, COMPLAINT, AND ATTACHMENTS A THROUGH F IN THE SUPERIOR COURT FOR THE STATE OF ALASKA FIRST JUDICIAL DISTRICT AT JUNEAU,

KLUKWAN, INC. AND THE GENERAL INCOME
TRUST,

VS.

XL SPECIALTY INSURANCE COMPANY, A
DELAWARE CORPORATION, LICENSED TO
BUSINESS IN ALASKA UNDER ID 8085,

CASE NO. 1JU-12-924 CI

and that I have accepted, on your behalf, the above service, as received in person in Juneau, Alaska, on the 06TH DAY OF MARCH 2013.

In accordance with the provisions of AS 21.09.180-190, one copy of the document together with my certification is forwarded to you:

XL SPECIALTY INSURANCE COMPANY,

at your address on file in this office, via certified mail, return receipt requested.

Do not file your answer or response with this office. Direct your questions or response to the court, attorney, or party whose name and address appear on the document served.

*Bret S. Kolb*

Bret S. Kolb
Director



Service of Process Section
Division of Insurance
P.O. Box 110805
Juneau, AK 99811-0805
Stacie Estevez
Phone (907) 465-4614

IN TESTIMONY WHEREOF
I have hereunto set my
hand and affixed my official
seal, at Juneau, Alaska this
11TH DAY OF MARCH 2013.